Strafford,
Feb. 3, 1903.

### ROCHESTER LUMBER CO. *v.* LOCKE.

### SMITH *v.* SAME.

The provision of the United States bankruptcy act of 1898, that liens obtained within four months prior to the filing of a petition shall be void and property of the bankrupt shall be released therefrom, was enacted solely for the benefit of creditors, and does not affect a lien created by attachment, as against the bankrupt himself.

THE FIRST ACTION is assumpsit. THE SECOND is trover by the sheriff, to recover the value of goods attached in the first action and taken from him by the defendant. Trial at the September term, 1902, of the superior court before *Young,* J., who found the following facts:

January 25, 1901, Locke mortgaged certain personal property to one Cavanaugh, who did not make or subscribe the affidavit

required by the statute.   January 11, 1902, the Lumber Company caused Smith to attach the same property in a suit against Locke. Neither Smith nor the Lumber Company had actual knowledge of the mortgage, and are not chargeable with knowledge of it unless its record is sufficient for that purpose.   January 16, 1902, Locke filed a voluntary petition in bankruptcy and subsequently obtained his discharge.   January 22, 1902, Locke forcibly took the property from the sheriff's keeper and has since retained possession of it.   Locke included the attached property in his bankruptcy schedules, but the trustee did not take possession of it because of the mortgage.   Upon these facts judgment was ordered for the plaintiffs in both actions, and the defendant excepted.   The judgment in the first action was *in rem.*

*Felker & Gunnison,* for the plaintiffs.

*Elmer J. Smart,* for the defendant.

PARSONS, C. J.   As against the defendant Locke, the plaintiff company acquired by the attachment a lien upon the property attached for the satisfaction of any execution which they might obtain in the suit.   *Kittredge* v. *Warren,* 14 N. H. 509; *Kittredge* v. *Emerson,* 15 N. H. 227.   The order of the court making such application was therefore authorized, unless the facts stated in the case arising after the attachment have annulled this lien as against Locke.   The actual possession by Smith of the property taken by the defendant Locke is sufficient evidence of title to sustain an action of trover against a mere wrongdoer.   *Harrington* v. *Tremblay,* 61 N. H. 413.   His possession under the attachment gave him a special property in the goods and a right to the possession against any one claiming them under a title to which the lien of the attachment was superior.   *Johnson* v. *Railway,* 44 N. H. 626; *Lathrop* v. *Blake,* 23 N. H. 46, 56.   Prior to the adjudication in bankruptcy Locke had no right of possession, and he is liable for the value of the goods taken by him unless as matter of law such adjudication revested in the bankrupt both the title and right of possession as against the officer.

One general purpose of the United States bankruptcy act of 1898 (*c.* 541) was to distribute the bankrupt's property proportionally among all his creditors.   In furtherance of that purpose, the act contains provisions designed to prevent one creditor from acquiring a preference over other creditors through legal proceedings commenced within four months prior to the bankruptcy.   *In re Kenney,* 105 Fed. Rep. 897.   Whether the sections inserted for this purpose (67c and 67f) can or not be reconciled with each

other, or, if not, which section is to be taken as the expression of the legislative purpose, is not here material. The purpose of each is the same—to secure to the trustee the bankrupt's property discharged of liens so created. Section 67f, under which the defendant claims, provides that liens so obtained " shall be deemed null and void," and that the property so affected " shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt." This language is an elaboration of the provision of the bankruptcy act of 1867, that the conveyance to the assignee " shall dissolve any such attachment made within four months next preceding the commencement of the bankruptcy proceedings." R. S. U. S., s. 5044. It was held under this clause that an attachment was not dissolved as against the bankrupt. *Sims* v. *Jacobson*, 51 Ala. 186. The present language has no tendency to establish a purpose different from the construction put upon the former act. It seems intended to make clear what before might have been open to argument. The peculiar language used raises the question: By whom and when are such liens to be " deemed null and void," and the property affected deemed " wholly discharged and released from the same ?" The inquiry is answered by the general purpose of the act and the language of the section. The property by the section is to pass to the trustee as a part of the estate of the bankrupt. From this it follows, that in any controversy between the trustee and the lienors, and in any proceeding in relation thereto for the purposes of the act, the lien is to be *deemed* null and void. Further than this the act does not go. The language makes clear what has been stated was the construction put upon the act of 1867: that as against the bankrupt himself the lien was not affected. The same view has been expressed in a recent case in Massachusetts, where it is said: " The effect of section 67f of the United States bankruptcy act of July 1, 1898 (*c.* 541), is not to avoid the levies and liens therein referred to against all the world, but only as against the trustee in bankruptcy and those claiming under him, so that the property may pass to and be distributed by him amongst the creditors of the bankrupt." *Frazee* v. *Nelson*, 179 Mass. 456, 460. As the attachment lien was valid against all the world except the trustee and those claiming under him, the possession of the sheriff was lawful as against the bankrupt Locke. Further support for this position may be found in the limitation contained in the section itself upon the general provision that such liens shall be deemed null and void, viz., " unless the court shall, on due notice, order that the right under such attachment  .  .  . shall be preserved for the benefit of the estate ; and thereupon the same may pass to and shall be preserved by the trustee for the

benefit of the estate as aforesaid." This provision is worthless if the lien is destroyed by the adjudication. To render the provision of any value, the lien and consequent right of the officer to possession must continue at least until the appointment of the trustee, in order to afford opportunity for application to the court for the preserving order. Whether the trustee would have been justified in forcibly taking the property from the sheriff's possession (*Doe* v. *Childress*, 21 Wall. 642, 646, 647), need not be considered, for the action of the bankrupt was not adopted by the trustee, and the property did not become part of the bankrupt estate in the possession of the trustee. Whether, therefore, Locke could have successfully defended by showing, either in answer to the action or in mitigation of damages, that the property was distributed by the trustee, is a question not raised. The facts do not bring the case within *Whittredge* v. *Maxam*, 68 N. H. 323, or *Berry* v. *Flanders*, 69 N. H. 626, cited by the defendant, if the cases are otherwise applicable.

The defendant further claims that, because of the failure of the trustee in bankruptcy to dispose of the property in question, the title thereto reverts to or revests in him, unaffected by the bankruptcy proceedings, and that he now owns it. *Jones* v. *Pyron*, 57 Tex. 43, 47; *Herndon* v. *Davenport*, 75 Tex. 462, 464. If this claim is well founded, the bankruptcy proceedings are immaterial upon the question of Locke's title. He has now the same title and right to the property that he had when he filed his petition in bankruptcy. He then owned it subject to Cavanaugh's mortgage claim and the lien and right of possession of the plaintiffs under the attachment. It may be conceded he has that right now. If the trustee in bankruptcy could have held the mortgaged and attached property as against either the attachment or the mortgage, his failure to make any claim against either by taking possession of the property is not an adjudication or evidence that either lien was invalid as against him or the bankrupt. The right of the plaintiffs under the attachment may or may not be superior to Cavanaugh's mortgage title. Whether it is or not, is immaterial in this suit to which Cavanaugh is not a party. The evidence as to the mortgage is therefore entirely irrelevant to any issue in this case.

In a controversy between the plaintiffs and Cavanaugh, neither claiming under the trustee in bankruptcy, evidence as to the bankruptcy would be immaterial. The unasserted right of the trustee, valid as against either or both of the claimants, would not confer any right upon either.

In the present case, whether the trustee in bankruptcy has or had a valid title to the property is equally immaterial and indeter-

minable.   Locke can no more defend this suit by alleging the non-asserted right of the trustee, if once existent, than he could by setting up the equally non-asserted right of the mortgagee.   As no title or right to the possession of the property taken from the possession of the sheriff by Locke after the bankruptcy is established in the defendant, judgment was properly ordered against him for the value of the goods so taken, and, his bankruptcy being suggested, against the avails of the attachment in the suit upon the preëxisting debt.   *Batchelder* v. *Putnam*, 54 N. H. 84.

*Exceptions overruled.*

CHASE, J., was absent: the others concurred.